IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| DONNA B. NOBLE; WILLIAM NOBLE, husband and wife,<br>                  Plaintiffs<br><br>   vs.<br><br><br>CORPORAL BARRY GASTON,<br>                  Defendant | Civil Action No. 08-348<br>Judge Gary L. Lancaster/<br>Magistrate Judge Amy Reynolds Hay |

REPORT AND RECOMMENDATION

I.     Recommendation

In this action brought pursuant to 42 U.S.C. § 1983, the Court considers a Motion for Summary Judgment (Doc. 43) filed by Defendant, Pennsylvania State Police Corporal Barry Gaston ("Gaston"), with respect to the remaining single federal claim - the claim that Gaston used excessive force against the Plaintiff, Mrs. Donna B. Noble ("Noble" or "the Plaintiff"), in violation of her rights under the Fourth Amendment to the United States Constitution - and a number of related state law claims. It is respectfully recommended that the Motion be denied.

II.    Report

    A.    Standard of Review

Summary Judgment is appropriate only where there are no genuine issues of material fact. Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words,

if the evidence, however, is "'merely colorable' or is 'not significantly probative,'" summary judgment may, nonetheless, be granted. Equimark Commercial Fin. Co. v. C.I.T. Fin. Serv. Corp., 812 F.2d 141, 144 (3d Cir.1987) (quoting Anderson, 477 U.S. at 249-50).

In evaluating the evidence, the Court must view the facts and the inferences to be drawn therefrom in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. The burden of establishing that no genuine issue of material fact exists rests with the movant. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. When examining the record to see if there are genuine issues of material fact, the Court's focus is on issue finding, not on issue resolution.

    B.    Facts

By way of preface, the Court notes that its determination of the undisputed facts is affected - but not fundamentally altered - by the Plaintiff's failure to comply with the Court's Local Rules governing Summary Judgment. First, LCvR 56.B(1) requires that a party seeking summary judgment file with the Court a concise statement of material facts "setting forth the facts essential for the Court to decide the motion . . . which the moving party contends are undisputed and material, including any facts which for purposes of the summary judgment motion are assumed to be true." The Defendant complied with this Rule. See (Doc. 45). Next, LCvR 56.C requires that the party opposing the motion for summary judgment file:

> 1. [A] separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:

      a.      admitting or denying whether each fact contained in the moving
party's . . . Statement . . . is undisputed and/or material;

      b.      setting forth the basis for the denial . . . ;

      c.      setting forth in separately numbered paragraphs any other material
facts that are allegedly at issue, and/or that the opposing party
asserts are necessary . . . .

Id. Where the non-moving party fails to comply with LCvR 56.C, those facts which the movant claims are undisputed will be deemed admitted. LCvR 56.E. Because the Plaintiff failed to file the mandatory responsive concise statement, the Court determines the undisputed facts by looking only to the concise statement filed by the Defendant.

On March 16, 2006, Noble and her husband, members of a group called the Concerned Citizens of Hanover Township, attended a meeting of the Township Supervisors. (Doc. 43 Ex. 3 at 14-18). One of the approximately 200 attendees spoke on an issue under consideration, but failed to yield the floor after his three minute time limit had expired. A verbal confrontation ensued, the meeting was halted, and the Pennsylvania State Police were called. (Id. at 18-25). Gaston and other officers were dispatched to the scene after being told that immediate assistance was needed in connection with a disturbance at the meeting. ( Doc. 43 Ex. 1 at 10). When Gaston arrived, he entered the building where the meeting was being held, and engaged in crowd dispersal, ordering those present to leave the premises. (Doc. 43 Ex. 3 at 26). Noble and her husband responded to Gaston's orders and left the building. (Id. at 25-29). Arrests were effected outside the building when a small number of people resisted police orders to leave the area. (Id. at 30-33).

The Plaintiff contends that after she left the building, she waited near the parking lot for

her husband to retrieve their car and pick her up. (Id. at 30). Before her husband arrived, Gaston approached Noble, directing her to leave the premises. Noble explained that she was waiting for her husband. Gaston responded, saying, "I want you out of here," and poked Noble twice in the left shoulder with his left index finger. (Id. at 36-37, 44-45). Noble continued to explain why she was not leaving, stating, "[T]here's no need to . . . I'm leaving as soon as my husband brings the car . . . I'm three and a half miles from my house . . . I'm not doing anything wrong." (Id. at 37).

According to Noble, these events occurred about four feet from a news reporter who was interviewing those who had left the meeting. Gaston had repeatedly asked this reporter to leave the premises. (Id. at 37-38). Noble states that after her exchange with Gaston, she attempted to move closer to the reporter and the group surrounding her. As she took a step, Gaston "grabbed her shoulder from behind, causing her to fall part way to the ground." (Id. at 38-39, 44-45). Noble was able to break her fall with her left hand and push herself back to a standing position. (Id. at 40). In the process, however, she suffered injury to her right ankle and knee, and ultimately underwent knee surgery. (Id. at 53-57).

Noble contends that Gaston violated her Fourth Amendment rights by using excessive force against her. She also asserts state causes of action against him for assault, battery and intentional infliction of emotional distress. The Plaintiff's husband, William Noble, asserts a state law claim for loss of consortium.

    C.    Discussion

        1.    The Excessive Force Claim

The test for evaluating a claim of excessive force is one of overall objective reasonableness judged from the perspective of a reasonable officer on the scene. Graham v.

Connor, 490 U.S. 386, 395, 397 (1989).  This test "requires careful attention to the facts of each case, including assessment of the severity of the crime alleged, the threat to the safety of officers or others, whether a suspect resists arrest, the duration of the action taken by the officer, whether the action takes place during the course of an arrest, the likelihood that the suspect is armed, the number of persons with whom the police officer must deal at one time, and whether physical injury is alleged.  See Couden v. Duffy, 446 F.3d 483, 496-97(3d Cir. 2006); Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir.1997) (abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir.2007)).  The calculus of reasonableness includes the fact that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving." Graham, 490 U.S. at 396.

"Although reasonableness under the Fourth Amendment should frequently remain a question for the jury, defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Estate of Smith v. Marasco, 516 (3d Cir. 2006) (internal citations omitted). Gaston contends that he is entitled to summary judgment on Noble's Fourth Amendment claim because, even when her version of the facts is credited, it is clear that any force exerted upon her was de minimis only, and was, therefore, objectively reasonable.  "[N]ot every shove or push, even if it may seem unnecessary in the peace of the judge's chambers . . . violates the Fourth Amendment." Graham, 490 U.S. at 396.

In support of this contention, Gaston relies on the decision in Benckini v. Hawk, 654 F.Supp.2d 310 (E.D. Pa. 2009). There, the court resolved a Fourth Amendment excessive force claim at the summary judgment stage, writing: "Considering the facts in the light most favorable

5

to [the plaintiff], even as he described it[,] his interaction with the officers lasted only minutes, and any force exerted against him was limited to a single shove that did not result in any injury." Id. at 323. The evidence in Benckini showed that the plaintiff had repeatedly argued with landowners about his right to enter their land, had trespassed on their properties multiple times, argued with police officers about his right to access the land, denied the officers' statements about his rights, ignored their direct instructions, and, in their presence, attempted to approach "innocent third parties who [did ] not wish to be further involved." Id.

The Court finds that the facts in this matter are materially different from those in Benckini. Benckini had a history of harassing landowners and trespassing, even after it had been legally determined that he had no right to be on the land. When he was prevented from entering the land directly, he gained access from an adjacent landowner. In doing so, Benckini exceeded the permission granted to him, verbally engaged police officers on more than one occasion, and, ignoring police directions, was in the process of harassing and approaching the adjacent landowner when an officer pushed him once to halt that approach. No injury resulted.

The incident described by Noble is distinguishable. It did not have a protracted history, and the Plaintiff did not engage in obstreperous conduct. On the contrary, viewing, as it must, the facts and the reasonable inferences to be drawn therefrom in the light most favorable to Noble, the Court is presented with an elderly woman who left a meeting hall with the remaining attendees, was standing alone without causing any sort of disruption, offered a reasonable explanation for her continued presence on the premises, and was grabbed from the rear with sufficient force to cause her to stumble part way to the ground, causing significant injury to her ankle and knee. If this is, in fact, what took place, the Court is not prepared to say that the force

6

applied to the Plaintiff was not excessive. Although the Court is by no means convinced that Noble will be successful in establishing to the satisfaction of a jury that events transpired as she alleges, she is entitled to try.

      2.      Qualified Immunity

"[G]overnment officials are immune from suit in their individual capacities unless, 'taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right' and 'the right was clearly established' at the time of the objectionable conduct." Thomas v. Atty. Gen.of N.J., __F. Supp.2d __, No. 07- 4720, 2010 WL 502992, at *5 (D.N.J. Feb. 8, 2010) (quoting Saucier v. Katz, 533 U.S. 194, 202)). Courts may address either of these essential requirements first, depending on the factual circumstances of the case. Pearce v. Callahan, __ U.S.__, 129 S.Ct. 808, 818 (2009).[1]

The qualified immunity determination here rests on credibility determinations and resolution of factual issues. See Wright v. Philadelphia, 409 F.3d 595, 604 (3d Cir. 2005). Depending on which party's version of events is credited, the facts, viewed from the perspective of a reasonable officer on the scene, could support the conclusion that a constitutional violation occurred, or that it did not. See Reynolds v. Smythe, 418 F.Supp.2d 724, 725 (E.D. Pa. 2006). The open questions regarding what transpired between Noble and Gaston are "in tension" with the Supreme Court's imperative in Saucier that the availability of qualified immunity be determined at the earliest possible point in the litigation. Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002). The Court of Appeals for the Third Circuit has addressed this tension: "Just as the granting of

---

[1] In Saucier, which has now been modified, the Court held that the violation of a constitutional right was to be determined first.

summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." Id. at 228 (citing Sharrar, 128 F.3d at 828). Such is the case here.

### 3. The State Law Claims

The Defendant next argues that the Court should decline to exercise pendant jurisdiction over Noble's state law tort claims, or should, in fact, dismiss them because Gaston is entitled to sovereign immunity. Pennsylvania law is to the contrary. See Dull v. W. Manchester Twp. Police Dept., 604 F. Supp.2d 739, 754 n.11 (M.D. Pa. 2009) (stating that state agency employees "possess immunity to the same extent as their employers, 42 Pa. Const. Stat. Ann. § 8545, unless they commit an act of 'willful misconduct,' including an intentional tort. Id. § 8550; Delate v. Kolle, 667 A.2d 1218, 1121 (Pa. Commw. Ct. 1995)."). See also Renk v. Pittsburgh, 641 A.2d 289, 293 (1994) (holding that willful conduct is established where there has been an intentional tort). All of the state law claims made by Noble involve intentional torts. Because the reasonableness of any force used in the Defendant's interaction with Mrs. Noble controls disposition of both federal and the state law claims, the Defendant's Motion for Summary Judgment should be denied in its entirety.

## III. Conclusion

Because, as explained above, there are outstanding genuine issues of material fact with respect to the federal and state claims, the Court recommends that the Defendant's Motion for Summary Judgment (Doc. 43) be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local

Rule 72.D.2 B, the parties are permitted to file written objections in accordance with the schedule included in the docket entry reflecting the filing of this Report and Recommendation. Any response to objections may be filed in accordance with Local Civil Rule 72.D.2.

                                                                 Respectfully submitted,

                                                                 */s/ Amy Reynolds Hay*
                                                                 United States Magistrate Judge

Dated: 29 June, 2009

cc:    Hon. Gary L. Lancaster
       United States District Judge

       Counsel of Record Via CM-ECF